**SINGLETON SCHREIBER, LLP**
MICHELLE M. MEYERS, SB# 236387
LISA J. NICHOLES, SB # 242852
JOHN R. TERNIEDEN, SB# 330343
1414 K Street, Suite 300
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515
E-Mail: mmeyers@singletonschreiber.com
E-Mail: lnicholes@singletonschreiber.com
E-Mail: jternieden@singletonschreiber.com

Attorneys for Plaintiff KEIR MILAN, an individual, on behalf of himself and all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEIR MILAN, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS COMPANY, a Delaware corporation; GENERAL MOTORS LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:26-cv-07939<br><br>**VERIFIED FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff KEIR MILAN ("Milan"), by and through his undersigned counsel, on his own behalf and on behalf of all other persons similarly situated, sues GENERAL MOTORS COMPANY ("GMC"); General Motors LLC ("GM LLC"); and Does 1 through 100 ("Doe Defendants") (GMC, GM LLC, and Doe Defendants are collectively referred to herein as the "Defendants") and for this Verified First Amended Class Action Complaint, alleges upon information and belief, and based on the investigation to date of his counsel, as follows:

## INTRODUCTION

1. This is a class action brought for the benefit and protection of Plaintiff Milan and all other similarly situated consumers against Defendants for Defendants' wrongful conduct in connection with the promoting, advertising, marketing, sale, and distribution of the 2025 Chevrolet Blazer EV SUV FWD ("Class Vehicle" or "Class Vehicles").

2. According to the original Monroney label that was affixed to the Class Vehicles, GM LLC represented that the Class Vehicles had a Government 5-Star Safety Rating in three areas: Overall Vehicle Score, Frontal Crash, and Side Crash.

3. Star ratings range from 1 to 5 stars, with 5 stars being the best available rating.

4. However, at some point in or around November 2025, GMC sent letters to Class Vehicle owners to inform them that the Monroney label that was affixed to the Class Vehicles was incorrect. Specifically, the letter informed Class Vehicle owners that the reported overall vehicle score from the National Highway Traffic Safety Administration ("NHTSA") of 5-Stars was incorrect. According to GMC, the Class Vehicles actually had a "Not Rated" overall vehicle score from the NHTSA.

5. By making false, fraudulent, and misleading statements to consumers regarding the overall safety rating of the Class Vehicles, Defendants made substantial profits and deceived thousands of California consumers, including

Plaintiff Milan, who purchased and paid for the Class Vehicle under the false belief that the Class Vehicles had the highest overall safety rating possible, when in fact, they were not rated at all.

6. Defendants misled, induced, and defrauded California consumers into spending money, and thus California consumers were harmed by Defendants' misrepresentations and unfair, unlawful and fraudulent business practices.

## **JURISDICTION**

7. This Court has jurisdiction over Plaintiff Milan's claims and causes of action asserted herein under 28 U.S.C. section 1332(d) because the aggregated claims of the class members, which class consists of at least 100 proposed plaintiffs, exceed the sum or value of $5,000,000, exclusive of interest and costs, and at least one Class Member (defined below) is a citizen of a state different from Defendants.

8. This Court has personal jurisdiction over all Defendants because all Defendants conduct business and operate in this District and in the State of California. Defendants have engaged in the business of marketing, advertising, promoting, distributing, repairing, and/or selling the Class Vehicles in California.

## **VENUE**

9. Venue in this Court is proper pursuant to 28 U.S.C section 1391 because Defendants engaged in the above-described business activities in this District, in Ventura County, and throughout California. A meaningful portion of the practices, events, and/or omissions complained of herein occurred and/or had an effect in this District, in Ventura County, where Plaintiff Milan and many of the putative class members (described below) reside.

## **PARTIES**

10. At all relevant times, Plaintiff Milan was and has been a citizen of the State of California and a resident of Ventura County. Plaintiff Milan was deceived by Defendants' fraudulent and misleading representations and/or omissions regarding the overall safety of his Class Vehicle, and was thus harmed by Defendants

when he overpaid for a Class Vehicle that was not rated as safe as initially reported.

11. Upon information and belief, Plaintiff Milan alleges that Defendant GMC is a Delaware-incorporated company headquartered in Detroit, Michigan. GMC distributes GMC parts and vehicles (including the Class Vehicles) which are then sold through dealerships. Monies received from the purchase of a GMC vehicle (including the Class Vehicles) flow from the consumer to GMC. The exact nature and means by which monies flow from consumers to GMC is unknown to Plaintiff Milan at this time.

12. Upon information and belief, GMC is comprised of affiliated entities, each of which conducts business in the state of California. These entities, individually or collectively, through an integrated corporate structure (the details of which Plaintiff Milan is presently unaware), market, sell and provide Class Vehicles and associated parts, products, and services.

13. One of these affiliate entities is Defendant GM LLC. Upon information and belief, GM LLC is a limited liability company organized under Delaware law with its principal place of business in Detroit, Michigan. Chevrolet is a division of Defendants GMC and GM LLC. GMC and GM LLC manufacture Chevrolet automobiles, including the Class Vehicles.

14. Based on filings made in other cases, such as *State Farm Fire & Casualty Co. v. General Motors LLC*, No. 1:13-cv-00184 (N.D. Ind.) and *Carriuolo v. General Motors LLC,* No. 14-cv-61429 (S.D. Fla.), as well as filings GMC made with the Securities and Exchange Commission, including a Form 8-K from October 2009[1], Plaintiff Milan pleads the following additional jurisdictional facts: The sole member and owner of GM LLC is General Motors Holdings LLC. The sole member and owner of General Motors Holdings LLC is GMC.

15. Upon information and belief, and the language in the Monroney label itself, GM LLC was responsible for the design, creation, content, and placement of

[1] http://www.sec.gov/Archives/edgar/data/1467858/000119312509212823/d8k.htm

the misleading label on Class Vehicles. GM LLC either placed the misleading labels on the Class Vehicles, or directed automobile dealers to place the misleading label on the Class Vehicles.

16. The true names and/or capacities, whether individual, corporate, partnership, associate, governmental, or otherwise, of the Doe Defendants, inclusive, and each of them, are unknown to Plaintiff Milan at this time, who therefore sues said Doe Defendants by such fictitious names. Plaintiff Milan is informed and believes, and thereon alleges, that each Defendant designated herein as a Doe Defendant caused injuries and damages proximately thereby to Plaintiff Milan and the putative class as hereafter alleged, and that each Doe Defendant is liable to Plaintiff Milan and the putative class for the acts and omissions alleged below, and the resulting injuries to Plaintiff Milan and the putative class, and damages sustained by Plaintiff Milan and the putative class. Plaintiff Milan will amend this Class Action Complaint to allege the true names and capacities of said Doe Defendants when the same are ascertained.

## FACTS COMMON TO ALL CLASS MEMBERS

**GMC and GM LLC are Vehicle Manufacturers**

17. Upon information and belief, Plaintiff Milan alleges GMC is one of the largest automobile manufacturers in the world and sells its vehicles and associated services to consumers across the United States – including California.

18. GMC and GM LLC manufacture a number of differently branded vehicles in the United States, such as Chevrolet, Buick, and Cadillac.

19. Among the fleet of Chevrolet vehicles that GMC and GM LLC manufactures are the Class Vehicles.

20. Upon information and belief, GM LLC is the wholly owned entity of GMC generally responsible for automotive operations, including manufacturing and sales.

**Class Vehicle Safety Information**

21. Historically, automobile consumers have prioritized performance, design, fuel efficiency, and technology when deciding which vehicles to purchase.

22. However, the industry is noticing a shift. According to recent research, more than 75 percent of potential car purchasers increasingly prioritize safety when deciding which vehicles to buy. There are many causes for this shift, one of which includes a link between car safety and the cost of insurance.[2]

23. Plaintiff Milan is informed and believes, and thereon alleges, that insurers use NHTSA ratings to gauge the risk of injury and property damage. Vehicles with top safety ratings (4-5 stars) reduce the potential for severe, high-cost claims, often leading to lower premiums for medical payments and personal injury protection. NHTSA safety ratings directly influence California auto insurance premiums, with higher-rated vehicles (e.g., 5-star) typically qualifying for lower premiums due to reduced risk of severe injury claims. Conversely, lower ratings or unrated vehicles may result in higher premiums, as insurers view them as higher risk or more expensive to repair.

24. Recognizing this trend, car manufacturers routinely advertise the safety benefits of their vehicles. GMC and GM LLC are no different. GMC and GM LLC have a dedicated campaign focusing on their vision to zero crashes.[3]

25. Plaintiff Milan is informed and believes, and thereon alleges, that the Monroney label is often the first interaction a vehicle purchaser will have as to the particular safety ratings of a vehicle.

26. A Monroney label is a federally mandated window sticker on new U.S. vehicles that details pricing, features, fuel economy, safety ratings, and other essential information.

27. Plaintiff Milan is informed and believes, and thereon alleges, that GM

[2] https://www.globalbrandsmagazine.com/rising-importance-of-vehicle-safety/
[3] https://www.gm.com/innovation/vehicle-safety

LLC, as the manufacturer of the Class Vehicles, controlled the design, content, and printing of the Monroney label and had access to the NHTSA rating data before the label was printed. GM LLC either placed the label on the Class Vehicles itself or directed automobile dealers to place the Monroney label GM LLC created on all Class Vehicles.

28. GM LLC knew or should have known the Monroney label was false when it designed and printed the label, when it placed or directed the false label to be placed on the Class Vehicles, and when the label remained on the Class Vehicles at the point of sale.

29. Plaintiff Milan is informed and believes, and thereon alleges, that the Monroney label affixed to the Class Vehicles was a GM LLC corporate label that originated from Michigan.

30. According to GM LLC's original Monroney label that was affixed to Class Vehicles – and that was affixed when Plaintiff Milan purchased his Class Vehicle – Class Vehicles were given a Government 5-Star Safety Rating (the highest rating possible) in three areas: Overall Vehicle Score, Frontal Crash, and Side Crash.

31. The label below is an exemplar Monroney label and the version viewed by Plaintiff Milan and Class Members included the same content as pertains to the Government 5-Star Safety Rating in Overall Vehicle Score, Frontal Crash, and Side Crash. GM LLC directed that the exemplar label be placed on each Class Vehicle. The exemplar label reflects that the misleading statements in the Monroney label viewed, considered, and relied upon by Plaintiff Milan and Class Members when making their decision to purchase the Class Vehicle were virtually identical, if not identical.




32. Plaintiff Milan is unaware of the exact date GMC and GM LLC began selling the Class Vehicle in California. But upon information and belief, Plaintiff Milan alleges that GMC and GM LLC began selling the Class Vehicle in California sometime toward the end of 2024.

33. But the original Monroney label that GM LLC designed and affixed to Class Vehicles was wrong. At some point in or around November 2025, GMC released letters to Class Vehicle owners that the Monroney label that was affixed to Class Vehicles was incorrect because the overall vehicle score from NHTSA was “Not Rated” – rather than the 5-star rating that was originally advertised.

34. As far as Plaintiff Milan is aware, there have been no recalls or efforts to compensate purchasers of the Class Vehicles for this lower safety score.

35. Plaintiff Milan believes and alleges that the incorrect Monroney label was affixed to Class Vehicles throughout California from when GMC and GM LLC began selling the Class Vehicles (late 2024) until it began sending notices like the

one Plaintiff Milan received (November 2025).

36. Plaintiff Milan believes and alleges that he and consumers throughout the United States, including California, saw and relied upon the incorrect Monroney label, substantially similar or identical to the exemplar label depicted above, that GM LLC caused to be affixed to the Class Vehicles at the point of sale. Plaintiff Milan and Class Members relied on the false Monroney label when purchasing the Class Vehicles. The Monroney label was a substantial factor, if not the controlling factor, in inducing Plaintiff Milan and Class Members to purchase the Class Vehicles.

**GM LLC's History of Incorrect Safety Information on Monroney Labels**

37. This is not the first time GM LLC published false vehicle safety information.

38. In or about 2013, GM LLC released and sold the 2014 Cadillac CTS with a Monroney label depicting it as having 5-star frontal crash and rollover ratings.

39. But it turns out, the NHTSA had not assigned <u>any</u> safety ratings to the 2014 Cadillac CTS.

40. As a result, GMC and/or GM LLC distributed letters to 2014 Cadillac CTS purchasers to advise them of the error in the Monroney label, and inform them that their vehicles had not actually been tested or rated by the NHTSA as to their vehicles' crash performance.[4]

## PLAINTIFF MILAN'S INDIVIDUAL ALLEGATIONS

41. In or around June 2025, Plaintiff Milan purchased a new Class Vehicle

---

[4] GM LLC previously faced class-action litigation arising from allegations that Monroney labels on 2014 Cadillac CTS vehicles inaccurately stated that the vehicles had earned NHTSA 5-Star Safety Ratings despite not having been rated by NHTSA. The litigation, which involved substantially similar allegations to those asserted in this action, was ultimately settled, placing GMC and GM LLC on notice of the importance of accurately representing NHTSA safety ratings on Monroney labels. (*See Carriuolo v. General Motors LLC, No. 14-cv-61429, United States District Court for the Southern District of Florida*).

from Community Chevrolet Company located in Burbank, California.

42. Plaintiff Milan alleges that money flowed from Community Chevrolet Company to Defendant GM LLC and GMC for the purchase of Plaintiff Milan's Class Vehicle.

43. One of Plaintiff Milan's major considerations in deciding to purchase his Class Vehicle was that it was advertised as being very safe. Plaintiff Milan reviewed the Monroney label prior to his decision to purchase the Class Vehicle, and noticed the Class Vehicle had a 5-Star overall rating.

44. Plaintiff Milan is informed and believes, and thereon alleges, that the overall safety rating of the Class Vehicle factored into the valuation of the Class Vehicle and corresponding price of the Class Vehicle.

45. Plaintiff Milan relied on GM LLC's representations that the Class Vehicle had an overall 5-star rating when he purchased it, as reflected in the Monroney label.

46. Plaintiff Milan agreed to the purchase price for his Class Vehicle expecting it had an overall 5-star rating as reflected in the Monroney label.

47. At the time he entered into the sales contract to purchase the Class Vehicle, no one told Plaintiff Milan that the Monroney label was wrong, or that the NHTSA had actually not bestowed a 5-star overall safety rating on the Class Vehicle.

48. It was not until several months later, on or around November 2025, that Plaintiff Milan learned his Class Vehicle was not nearly as safe as he bargained for.

49. GMC sent Plaintiff Milan a letter on official letterhead to inform him that the Monroney label that GM LLC affixed to Class Vehicles was incorrect. That letter read, in relevant part:

> This letter is to inform you that the Monroney label (window sticker) for your 2025 model year Chevrolet Blazer EV inadvertently included an overall vehicle score for the National Highway Traffic Safety Administration (NHTSA). The label should state that your vehicle is

"Not Rated" with an overall vehicle score from NHTSA. [5]

50. The letter was signed by Neelie O'Connor – GMC's executive director of customer care and aftersales.[6]

51. Had Plaintiff Milan known the Class Vehicle did not have the represented 5-Star overall vehicle score, he would not have purchased it, or would have paid less for it.

52. Plaintiff Milan is now left with a vehicle that is not as safe as he thought, which has negatively impacted his ability and willingness to drive it.

## CLASS ACTION ALLEGATIONS

53. Based on the facts and circumstances alleged herein, Plaintiff Milan brings this Class Action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and on behalf of all others similarly situated, and as a member of the Class defined as follows (the "Class" or "Class Members"):

During the fullest period permitted by law, all persons that purchased a Class Vehicle in California before Defendants updated the Monroney label to reflect a "Not Rated" overall vehicle score.

54. Excluded from the Class are assigned judges and members of their families within the first degree of consanguinity, Defendants, and their subsidiaries, affiliates, officers, and directors.

55. The Class Action meets the statutory prerequisites for the maintenance of a Class Action as set forth in Federal Rule of Civil Procedure 23, in that:

56. **Numerosity:** The proposed Class is so numerous that individual joinder of all the members is impracticable because members of the Class number in at least hundreds or thousands. The precise number of Class Members and their identities are unknown to Plaintiff Milan at this time but are objectively ascertainable

[5] The letter Defendant GMC sent to Plaintiff Milan is attached hereto as **Exhibit A.**
[6] According to Neelie O'Connor's LinkedIn page, Neelie is employed by General Motors. (*See https://www.linkedin.com/in/neelie-o-connor-721a591/*)

and will be determined through appropriate discovery and other readily available means.

57. Defendants possess objective evidence as to the identity of each Class Member and, to a reasonable degree of certainty, the harm suffered by each Class Member, including without limitation, corporate records.

58. Class Members may be notified of the pendency of this action by mail, publication and/or through the records of Defendants.

59. **Commonality and Predominance:** There are common questions of law and fact affecting Plaintiff and Class Members. Common legal and factual questions include, but are not limited to:

a. If Defendants became aware of the false and misleading representations concerning the overall vehicle score of the Class Vehicle;

b. When Defendants became aware of, or should have become aware of, the false and misleading representations concerning the overall vehicle score of the Class Vehicle;

c. Whether Defendants intended for Plaintiff Milan and Class Members to rely on the representations regarding the overall safety of the Class Vehicle when purchasing the Class Vehicle;

d. Whether by the misconduct set forth in this Complaint, Defendants engaged and continue to engage in unfair, fraudulent, or unlawful business practices;

e. Whether Defendants' conduct as set forth herein violated California Business and Professions Code sections 17200 and 17500;

f. Whether Defendants' conduct as set forth herein violated California's Consumer Legal Remedies Act and The Song-Beverly Consumer Warranty Act;

g. Whether Plaintiff Milan and Class Members are entitled to recover statutory attorney's fees;

k. Whether Plaintiff Milan and Class Members are entitled to civil penalties; and

l. The appropriate measure of the damages that have been sustained by Plaintiff Milan and Class Members.

60. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff Milan on behalf of himself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

61. **Typicality:** Plaintiff Milan's claims are typical of the claims of the proposed Class because Plaintiff Milan and Class Members were injured due to Defendants' uniform course of conduct concerning the misleading representations and/or omissions Defendants made regarding the overall safety of the Class Vehicle.

62. The claims of Plaintiff Milan and each member of the Class are identical.

63. **Adequacy:** Plaintiff Milan will fairly and adequately represent and protect the interests of the Class.

64. Plaintiff Milan's interests do not conflict with the interests of the Class he seeks to represent. Plaintiff Milan has retained counsel competent and experienced in prosecuting class actions, and Plaintiff Milan intends to vigorously prosecute this action.

65. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff Milan and Class Members.

66. Treatment of litigation as a class action will permit a vast number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

67. Individual Class Members will not wish to undertake the burden and expense of individual cases.

68. In addition, individualized litigation increases the delay and expense to

all parties and multiplies the burden on the judicial system. Individualized ligation also presents the potential for inconsistent or contradictory judgments.

69. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

70. Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members. Injuries sustained by Plaintiff Milan and Class Members flow, in each instance, from a common nucleus of operative facts as set forth herein.

71. In each case, Defendants' actions caused harm to all Class Members as a result of such conduct. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

72. Proposed Class counsel possesses the knowledge, experience, reputation, ability, skill, and resources to represent the Class and should be appointed lead counsel for the Class.

**COUNT I**

**(Unjust Enrichment)**

73. Plaintiff Milan and Class Members reallege and incorporate by reference each of the paragraphs and allegations set forth herein and above.

74. At all relevant times, Defendants deceptively marketed, advertised, and sold the Class Vehicles to Plaintiff Milan and Class Members by way of certain dealerships.

75. Monies paid to dealerships for the purchase or lease of Class Vehicles flowed to GM LLC and GMC.

76. The Class Vehicles purchased by Plaintiff Milan and Class Members did not provide the promised overall vehicle score safety rating.

77. Plaintiff Milan and Class Members conferred on Defendants a benefit in the form of monies that were paid in exchange for the purchase of the Class

Vehicles under a quasi-contract.

78. Defendants were aware and had knowledge of these non-gratuitous benefits, and in fact, intended for this to occur as a result of their marketing and sales practices that they knew were misleading.

79. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff Milan's and Class Members' purchases of the Class Vehicles, which retention under these circumstances is unjust and inequitable because Defendants misrepresented and/or omitted material facts concerning the Class Vehicles' safety rating. Defendants were enriched at the expense of Plaintiff Milan and Class Members.

80. Defendants' misrepresentations and/or omissions regarding the overall safety of the Class Vehicles caused injuries to Plaintiff Milan and Class Members because no reasonable consumer would have purchased the Class Vehicles, or purchased the Class Vehicles at the amount they did, if Defendants were honest about the value and the true facts regarding the Class Vehicles' safety rating.

81. Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff Milan and Class Members is unjust and inequitable. Under principles of equity and quasi-contract, Defendants should not be permitted to retain those benefits because they were obtained through the wrongful conduct alleged herein. Defendants must pay restitution to Plaintiff Milan and the Class Members for their unjust enrichment, as ordered by the Court.

82. Plaintiff Milan and Class Members suffered injury in fact and lost money and/or property as a result of Defendants' unlawful conduct alleged herein because they purchased Class Vehicles bearing Monroney labels that Defendants intentionally, willfully, and knowingly caused to include false and misleading safety-rating representations and caused to be placed on Class Vehicles, and Plaintiff Milan and Class Members relied on those representations in deciding to purchase the Class Vehicles and in paying the prices they paid.

83. To the extent required, Plaintiff Milan and Class Members lack an adequate remedy at law and are thus entitled to such relief because legal damages will not get them the vehicles they believed they were purchasing as legal damages will not improve the overall safety of their Class Vehicles.

84. Plaintiff Milan and Class Members have no plain, speedy, or adequate remedy at law because Defendants' enrichment is ongoing, the full extent of Defendants' gains is uniquely within Defendants' knowledge, and legal damages would be inadequate to restore Plaintiff Milan and Class Members and prevent future unjust enrichment based on GMC's and GM LLC's ongoing (and historic) behavior of misrepresenting the true safety rating of the Class Vehicles and other GMC and GM LLC vehicles.

85. Plaintiff Milan and Class Members continue to see GMC and GM LLC advertisements and visit GMC and GM LLC dealerships where GMC and GM LLC vehicles are sold and desire to purchase vehicles from GMC and GM LLC that have overall 5-star safety ratings and that have accurate and truthful Monroney labels that they can rely on with confidence.

86. Plaintiff Milan and Class Members wish to purchase and will purchase vehicles from GMC and GM LLC if they contain the safety features and protections as advertised, including as represented in the Monroney labels.

87. However, given GMC's and GM LLC's historic and ongoing practice of deception and mispresenting safety information in the Monroney labels they attach to their vehicles, Plaintiffs and Class Members cannot trust GMC or GM LLC, or their labels, absent injunctive relief. And Plaintiff Milan and Class Members have no way of determining or independently verifying whether the representations and information in the Monroney labels, including overall safety representations, are in fact true.

## <u>COUNT II</u>

## (Fraud)

88. Plaintiff Milan and Class Members reallege and incorporate by

reference each of the paragraphs and allegations set forth herein and above, which detail Defendants' fraudulent misrepresentations and omissions with specificity.

89. Defendants, either directly or by way of their agents, made affirmative false and misleading statements regarding the true safety rating of the Class Vehicles – such as the false and misleading statements in the Monroney label GM LLC designed and affixed to the Class Vehicles.

90. Alternatively, Defendants fraudulently omitted and concealed material facts regarding the true safety rating of the Class Vehicles.

91. Plaintiff Milan alleges that the respective officers, directors and/or managing agents and/or employees of Defendants, and each of them, had knowledge of, participated in, authorized and/or ratified the wrongful conduct as alleged herein.

92. Plaintiff Milan does not know the precise date when Defendants became aware that the Monroney label (and other marketing materials) erroneously represented the overall safety of the Class Vehicle as 5-stars, but he alleges Defendants had knowledge of the falsity of the facts in their misleading statements and/or omissions and/or concealments as Defendants continued to print marketing materials, Monroney labels, and sell Class Vehicles.

93. By way of their history of misrepresenting the safety rating of other vehicles, like the 2014 Cadillac CTS and the ensuring litigation regarding that vehicle, Defendants knew (or should have known) what testing was required by NHTSA to secure 5-star safety ratings.

94. When Defendants became aware of their error, they had a duty to promptly disclose it. But they did not and continued selling the Class Vehicles without correction.

95. Upon information and belief, Plaintiff Milan alleges Defendants continued to represent the Class Vehicles as having an overall vehicle score of 5 stars in order to gain a competitive advantage and sell more Class Vehicles, because Defendants know safer vehicles sell better.

96. Upon information and belief, Plaintiff Milan alleges that Defendants knew the Class Vehicles did not have a 5-star overall vehicle score when he purchased his Class Vehicle.

97. Plaintiff Milan and Class Members had no means available to determine the falsity of the statements or to discover the omissions and concealment.

98. Defendants intended for Plaintiff Milan and Class Members to rely upon their statements, omissions, and concealment – which includes the Monroney label.

99. The Monroney label was uniform across the country. The exemplar label depicted above is representative of the Monroney labels viewed by Plaintiff Milan and Class Members and contains the same or substantially similar safety-rating representations that GM LLC directed to be affixed to the Class Vehicles. Plaintiff Milan and all Class Members read it, saw it, reviewed it, and considered it and the representations therein as a critical part of their decision to purchase the Class Vehicles at the amounts they paid for them.

100. Plaintiff Milan and Class Members materially relied upon the statements, omissions, and concealment by purchasing or leasing the Class Vehicles, and no reasonable consumer would have purchased the Class Vehicles (or they would have paid less) if Defendants were honest about the value and the true facts regarding the Class Vehicles' overall safety rating were known.

101. The reliance of Plaintiff Milan and Class Members was justifiable and reasonable.

102. Plaintiff Milan and Class Members lacked knowledge the statements were false.

103. As a direct and proximate result of Defendants' misleading statements and/or omissions, Plaintiff Milan and Class Members suffered damages because they paid premium prices for Class Vehicles that were advertised, marketed, and labeled by Defendants as possessing a Government 5-Star Safety Rating when they did not.

As a result, Plaintiff Milan and Class Members were deprived of the benefit of their bargain and received vehicles worth less than the vehicles they were promised and reasonably expected to receive. The Class Vehicles suffered a diminution in value as a result of Defendants' misrepresentations, and Plaintiff Milan and Class Members paid more for the Class Vehicles than they otherwise would have paid had the true facts been disclosed.

104. Defendants' actions intentionally harmed Plaintiff Milan and the Class Members without just cause, and as such were evil, wanton, reckless, and intentional, and made with deliberate and flagrant disregard for consumers, so as to justify the imposition of punitive damages to punish Defendants and to deter them and others from engaging in similar conduct in the future.

## COUNT III

### (Negligent Misrepresentation)

105. Plaintiff Milan and Class Members reallege and incorporate by reference each of the paragraphs and allegations set forth herein and above, which detail Defendants' negligent misrepresentations with specificity.

106. Through their advertising, vehicle stickers (such as the Monroney label), communications with Plaintiff Milan and Class Members, and in the course of their regular business, Defendants made representations and/or omissions to Plaintiff Milan and Class Members of material facts concerning the incorrect safety rating of the Class Vehicles. The exemplar label depicted above is representative of the Monroney labels viewed by Plaintiff Milan and Class Members and contains the same or substantially similar safety-rating representations that GM LLC directed to be affixed to the Class Vehicles.

107. Defendants owed Plaintiff Milan and Class Members a duty to provide the Class Vehicles according to Defendants' representations or to disclose the true facts pertaining to the safety rating of the Class Vehicles prior to the purchase of the Class Vehicles.

108. Defendants breached their duty owed to Plaintiff Milan and Class Members by failing to provide the Class Vehicles as represented or by failing to disclose and truthfully represent the true facts pertaining to the safety rating of the Class Vehicles.

109. Defendants failed to act with reasonable care in making the above-mentioned representations and/or omissions, verifying the Monroney labels against actual NHTSA data before distributing thousands of Class Vehicles with the labels affixed, or correcting false reports and articles containing the incorrect safety rating.

110. Defendants made the above-mentioned representations and/or omissions concerning their Class Vehicles without reasonable grounds for believing them to be true.

111. Defendants made the above-mentioned representations and/or omissions with the intent to induce Plaintiff Milan and Class Members into purchasing or leasing the Class Vehicles.

112. Defendants knew or should have known that Plaintiff Milan and the Class Members were ignorant as to the true characteristics, capabilities, and value of the Class Vehicles and that Plaintiff Milan and Class Members would reasonably rely upon Defendants' representations and/or omissions. Defendants knew or should have known that Plaintiff Milan and Class Members have no way of determining or independently verifying whether the representations and information in the Monroney labels, including overall safety representations, are in fact true.

113. Plaintiff Milan and Class Members did justifiably and reasonably rely on Defendants' representations and omissions in purchasing their Class Vehicles. Plaintiff Milan and Class Members would not have purchased the Class Vehicles (or paid less for them) without such statements and/or omissions made by Defendants.

114. As a result of Defendants' acts and/omissions, Plaintiff Milan and Class Members were damaged and harmed by Defendants in that they have been deprived of their benefit of the bargain and lost monies in overspending on the Class Vehicles.

## COUNT IV

**(Violation of California Business & Professions Code section 17200)**

115. Plaintiff Milan and Class Members reallege and incorporate by reference each of the paragraphs and allegations set forth herein and above.

116. By engaging in the above-described conduct, Defendants acted in a manner that is unlawful; unfair; and fraudulent, and have thus engaged in unlawful; unfair; and fraudulent business practices to the extreme detriment of Plaintiff Milan and Class Members, which conduct is prohibited under California Business & Professions Code sections 17200, *et seq*.

117. Defendants' unlawful, unfair, and fraudulent conduct has allowed Defendants to enrich themselves at the expense of Plaintiff Milan and Class Members, including through the payment of monies to Defendants by Plaintiff Milan and Class Members, including without limitation through the purchase of the Class Vehicles.

118. Plaintiff Milan and Class Members are thus entitled to restitutionary and injunctive relief, including without limitation restitutionary disgorgement of any unlawful gains that Defendants obtained as a result of their unlawful, unfair, and fraudulent conduct at the expense of Plaintiff Milan and Class Members.

119. To the extent required, and given the historic and ongoing pattern of occurrences of Defendants' violations of misrepresenting the true safety rating of the Class Vehicles – either by way of Defendants' own marketing and advertising materials (like the Monroney label) or not taking action to correct false reporting made by third parties – to the detriment of future California Consumers – Plaintiff Milan and Class Members lack an adequate remedy at law, and thus are entitled to such relief.

120. Plaintiff Milan and Class Members lack an adequate remedy at law because they have purchased a vehicle that is not as safe as intended. Money damages will not suddenly make the Class Vehicles safer or bestow on the Class

Vehicles a 5-star overall vehicle score. Money damages will not fix Defendants' repeated failures to ensure that the Monroney labels GM LLC designed and affixed to GMC and GM LLC vehicles accurately and truthfully reflect the vehicles' actual safety ratings, nor will money damages prevent Defendants from continuing to place untruthful or misleading labels on vehicles offered for sale to consumers.

121. Plaintiff Milan and Class Members seek equitable relief in the form of restitution and injunctive relief – including injunctive relief for future purchasers of the Class Vehicles who would be harmed by any ongoing misrepresentations of the Class Vehicles' overall vehicle score. Defendants have acquired money from Plaintiff Milan and Class Members by means of unlawful, unfair, and fraudulent business practices. The precise amount of Defendants' unjust gains cannot be readily determined without equitable accounting, and legal damages are insufficient to prevent Defendants' continuing misconduct.

122. Plaintiff Milan and Class Members suffered injury in fact and lost money and/or property as a result of Defendants' unlawful conduct alleged herein because they purchased Class Vehicles bearing Monroney labels that Defendants intentionally, willfully, and knowingly caused to include false and misleading safety-rating representations and caused to be placed on Class Vehicles, and Plaintiff Milan and Class Members relied on those representations in deciding to purchase the Class Vehicles and in paying the prices they paid.

123. Injunctive relief is necessary to prohibit Defendants from engaging in the unlawful practices alleged herein, which given the habitual behavior evidenced from GMC's prior misconduct, is ongoing behavior that GMC will continue to engage in unless enjoined.

124. Plaintiff Milan and Class Members continue to see GMC and GM LLC advertisements and visit GMC and GM LLC dealerships where GMC and GM LLC vehicles are sold and desire to purchase vehicles from GMC and GM LLC that have overall 5-star safety ratings and that have accurate and truthful Monroney labels that

they can rely on with confidence.

125. Plaintiff Milan and Class Members wish to purchase and will purchase vehicles from GMC and GM LLC if they contain the safety features and protections as advertised, including as represented in the Monroney labels.

126. However, given GMC and GM LLC's historic and ongoing practice of deception and mispresenting safety information in the Monroney labels that they attach to their vehicles, Plaintiffs and Class Members cannot trust GMC or GM LLC, or their, labels absent injunctive relief. And Plaintiff Milan and Class Members have no way of determining or independently verifying whether the representations and information in the Monroney labels, including overall safety representations, are in fact true.

**COUNT V**

**(Violation of California Business & Professions Code section 17500)**

127. Plaintiff Milan and Class Members reallege and incorporate by reference each of the paragraphs and allegations set forth herein and above.

128. Defendants marketing materials and statements – such as those made in the Monroney label – concerning the Class Vehicles and their overall safety rating are commercial advertisements that Defendants intended to, and did, disseminate across the United States and California.

129. By engaging in the above-described conduct, Defendants made false statements in commercial advertisements directed at the public, and have thus engaged in unlawful, false, or misleading advertising under California Business & Professions Code sections 17500, *et seq*.

130. Defendants had an independent duty under California law to truthfully advertise the safety rating of the Class Vehicles, or to correct false information immediately once discovered.

131. Plaintiffs breached that independent duty, and continued sales after internal discovery of the error.

132. Defendants' false statements in their commercial advertisements

deceived or had the tendency to deceive a substantial segment of their audience and the Class.

133. Defendants' deception through their commercial advertisements was material and a substantial reason that Plaintiff Milan and Class Members purchased the Class Vehicles.

134. Plaintiff Milan and Class Members were harmed as a result of Defendants' false statements, and are thus entitled to restitutionary and injunctive relief, including without limitation restitutionary disgorgement of any unlawful gains that Defendants obtained as a result of their unlawful and unfair conduct at the expense of Plaintiff Milan and the California Members.

135. To the extent required, and given the historic and ongoing occurrences of Defendants' violations of misrepresenting the true safety rating of GMC and GM LLC vehicles – either by way of Defendants' own marketing and advertising materials (like the Monroney label) or not taking action to correct false reporting made by third parties – to the detriment of future California consumers, Plaintiff Milan and Class Members lack an adequate remedy at law, and thus are entitled to such relief.

136. Plaintiff Milan and Class Members lack an adequate remedy at law because they have purchased a vehicle that is not as safe as intended. Money damages will not suddenly make the Class Vehicles safer or bestow on the Class Vehicles a 5-star overall vehicle score. Money damages will not fix Defendants' repeated failures to ensure that the Monroney labels GM LLC designed and affixed to GMC and GM LLC vehicles accurately and truthfully reflect the vehicles' actual safety ratings, nor will money damages prevent Defendants from continuing to place untruthful or misleading labels on vehicles offered for sale to consumers.

137. Plaintiff Milan and Class Members seek equitable relief in the form of restitution and injunctive relief – including injunctive relief for future purchasers of the Class Vehicles who would be harmed by any ongoing misrepresentations of the

Class Vehicles' overall vehicle score. Defendants have acquired money from Plaintiff Milan and Class Members by means of unlawful, unfair, and fraudulent business practices. The precise amount of Defendants' unjust gains cannot be readily determined without equitable accounting, and legal damages are insufficient to prevent Defendants' continuing misconduct.

138. Plaintiff Milan and Class Members suffered injury in fact and lost money and/or property as a result of Defendants' unlawful conduct alleged herein because they purchased Class Vehicles bearing Monroney labels that Defendants intentionally, willfully, and knowingly caused to include false and misleading safety-rating representations and caused to be placed on Class Vehicles, and Plaintiff Milan and Class Members relied on those representations in deciding to purchase the Class Vehicles and in paying the prices they paid.

139. Injunctive relief is necessary to prohibit Defendants from engaging in the unlawful practices alleged herein, which given the habitual behavior evidenced from GMC's and GM LLC's prior misconduct, is ongoing behavior that GMC and GM LLC will continue to engage in unless enjoined.

140. Plaintiff Milan and Class Members continue to see GMC and GM LLC advertisements and visit GMC and GM LLC dealerships where GMC and GM LLC vehicles are sold and desire to purchase vehicles from GMC and GM LLC that have overall 5-star safety ratings and that have accurate and truthful Monroney labels that they can rely on with confidence.

141. Plaintiff Milan and Class Members wish to purchase and will purchase vehicles from GMC and GM LLC if they contain the safety features and protections as advertised, including as represented in the Monroney labels.

142. However, given GMC's and GM LLC's historic and ongoing practice of deception and mispresenting safety information in the Monroney labels that they attach to their vehicles, Plaintiffs and Class Members cannot trust GMC or GM LLC, or their labels, absent injunctive relief. And Plaintiff Milan and Class Members have no way

of determining or independently verifying whether the representations and information in the Monroney labels, including overall safety representations, are in fact true.

**COUNT VI**

**(Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code sections 1750 et seq.)**

143. Plaintiff Milan and Class Members reallege and incorporate by reference each of the paragraphs and allegations set forth herein and above.

144. Plaintiff Milan brings this cause of action on behalf of himself and on behalf of the members of the Class.

145. Defendants are "persons" as defined by California Civil Code section 176l(c).

146. Plaintiff Milan and Class Members are "consumers" within the meaning of California Civil Code section 1761(d) because they purchased their Class Vehicles for personal, family or household use.

147. By failing to disclose and by concealing the true nature of the Class Vehicles' overall safety score from Plaintiff Milan and the Class Members, Defendants violated California Civil Code section l770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code sections 1770(a)(5) and (7).

148. By failing to disclose and concealing the true nature of the Class Vehicles' overall safety score from Plaintiff Milan and the Class Members, Defendants violated California Civil Code section l770(a), as they advertised the Class Vehicles with the intent to not sell them as advertised. *See* Cal. Civ. Code sections 1770(a)(9).

149. Defendants violated section 1770(a)(9) of the CLRA by advertising the vehicles with the intent not to sell the vehicles as advertised.

150. Defendants' unfair and deceptive acts or practices occurred repeatedly

in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

151. Defendants knew or should have known or discovered – especially given their prior misconduct and ensuing litigation – that the Class Vehicles did not have the safety rating they advertised.

152. Defendants were under a duty to Plaintiff Milan and the Class Members to disclose the true safety rating of the Class Vehicles prior to purchase, because: (a) Defendants were in a superior position to know the true state of facts about the safety rating of the Class Vehicles; (b) Plaintiff Milan and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles were not as safe as advertised; (c) Defendants knew Plaintiff Milan and the Class Members could not reasonably have been expected to learn or discover the true safety rating; and (d) Defendants should have known the seriousness and means to avoid this misconduct based on prior conduct and corresponding litigation.

153. In failing to disclose the truth regarding the Class Vehicles' safety rating until Plaintiff Milan and the Class Members had already purchased the Class Vehicles, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

154. In representing the Class Vehicle's as having a 5-star overall vehicle score, Defendants knowingly, intentionally, and affirmatively misrepresented material facts to Plaintiff Milan and Class Members and breached their duty not to do so.

155. The facts concealed or not disclosed by Defendants to Plaintiff Milan and the Class Members are material in that a reasonable consumer would consider them important in deciding whether to purchase a Class Vehicles or pay a lesser price. Had Plaintiff Milan and other Class Members known that the Class Vehicles did not have the represented overall vehicle score, they would not have purchased the Class Vehicles, or would have paid less for them.

156. Plaintiff Milan and the Class Members reasonably relied on Defendants' misrepresentations and omissions.

157. As a result of Defendants' conduct, Plaintiff Milan and the Class Members have been harmed and suffered actual damages in that the Class Vehicles are not as safe as was represented to them when they purchased the Class Vehicles.

158. As a result of Defendants' conduct, Plaintiff Milan and the Class Members were harmed and suffered actual damages as a result of Defendants' misrepresentations and omissions with regard to vehicle safety in that they might have to pay higher insurance premiums because the Class Vehicles are not as safe as they expected.

159. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff Milan and the Class Members suffered and will continue to suffer actual damages. Plaintiff Milan and Class Members suffered damages because they paid premium prices for Class Vehicles that were advertised, marketed, and labeled by Defendants as possessing a Government 5-Star Safety Rating when they did not. As a result, Plaintiff Milan and Class Members were deprived of the benefit of their bargain and received vehicles worth less than the vehicles they were promised and reasonably expected to receive. The Class Vehicles suffered a diminution in value as a result of Defendants' misrepresentations, and Plaintiff Milan and Class Members paid more for the Class Vehicles than they otherwise would have paid had the true facts been disclosed.

160. Plaintiff Milan notified Defendants of the foregoing methods, acts, or practices declared unlawful by California Civil Code section 1770, but Defendants have not provided a global resolution to all Class Vehicle owners that would correct the methods, acts, or practices complained of therein.

161. Plaintiff Milan and the Class lack an adequate remedy at law and are entitled to equitable and injunctive relief – including injunctive relief for future purchasers of the Class Vehicles who would be harmed by any ongoing

misrepresentations of the Class Vehicles' overall vehicle score. Defendants have acquired money from Plaintiff Milan and Class Members by means of unlawful and unfair business practices. The precise amount of Defendants' unjust gains cannot be readily determined without equitable accounting, and legal damages are insufficient to prevent Defendants' continuing misconduct.

162. Injunctive relief is necessary to prohibit Defendants from engaging in the unlawful practices alleged herein, which given the habitual behavior evidenced from GMC's prior misconduct, is ongoing behavior that GMC and GM LLC will continue to engage in unless enjoined.

163. Plaintiff Milan and Class Members continue to see GMC and GM LLC advertisements and visit GMC and GM LLC dealerships where GMC and GM LLC vehicles are sold and desire to purchase vehicles from GMC and GM LLC that have overall 5-star safety ratings and that have accurate and truthful Monroney labels that they can rely on with confidence.

164. Plaintiff Milan and Class Members wish to purchase and will purchase vehicles from GMC and GM LLC if they contain the safety features and protections as advertised, including as represented in the Monroney labels.

165. However, given GMC's and GM LLC's historic and ongoing practice of deception and mispresenting safety information in the Monroney labels that they attach to their vehicles, Plaintiffs and Class Members cannot trust GMC and GM LLC, or their labels, absent injunctive relief. And Plaintiff Milan and Class Members have no way of determining or independently verifying whether the representations and information in the labels, including overall safety representations, are in fact true.

## COUNT VII

**(Breach of Implied Warranty Under The Song-Beverly Consumer Warranty Act, Cal. Civ. Code sections 1790 et seq.)**

166. Plaintiff Milan and Class Members reallege and incorporate by reference each of the paragraphs and allegations set forth herein and above.

167. Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

168. Defendants knew, or had reason to know, of the specific use for which the Class Vehicles were purchased.

169. Defendants provided Plaintiff Milan and Class Members with an implied warranty that the Class Vehicles were merchantable; adequately contained, packaged, and labeled; and conformed to the promises or affirmations of fact made on the container or label.

170. However, the Class Vehicles were not merchantable in that they were not adequately contained, packaged, or labeled; and they failed to conform to the promises or affirmations of fact made on the container or label.

171. Defendants impliedly warranted in the Monroney label affixed to the Class Vehicles that the Class Vehicles were given a Government 5-Star Safety Rating in three areas: Overall Vehicle Score, Frontal Crash, and Side Crash.

172. But contrary to the implied warranties, the Class Vehicles at the time of sale and thereafter did not confirm to the label in that they did not have a 5-Star rating from the NHTSA, but rather, actually had a “Not Rated” overall vehicle score from the NHTSA.

173. Defendants’ actions, as complained of herein, breached the implied warranty of the Class Vehicles in violation of California Civil Code sections 1791.1 and 1792.

## <u>COUNT VIII</u>

**(Breach of Express Warranty Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code section 1790, et seq.)**

174. Plaintiff Milan and Class Members reallege and incorporate by reference each of the paragraphs and allegations set forth herein and above.

175. Defendants were at all relevant times the “manufacturer” and/or “retail seller” of the Class Vehicles within the meaning of California Civil Code section

1791.

176. The Class Vehicles are "consumer goods" within the meaning of section 1791 because they were purchased by Plaintiff Milan and Class Members primarily for personal, family, or household use.

177. Plaintiff Milan and Class Members are "buyers" of consumer goods as defined by section 1791.

178. By affixing a Monroney label to each Class Vehicle at the point of sale, Defendants provided a written representation to Plaintiff Milan and Class Members that pertained to a specific characteristic of the Class Vehicles—namely, a Government 5-Star Safety Rating in three areas: Overall Vehicle Score, Frontal Crash, and Side Crash. This written representation constitutes an "express warranty" within the meaning of California Civil Code section 1791.2.

179. Under California Civil Code section 1793.2(b), Defendants were obligated to service or repair the Class Vehicles within a reasonable time to conform them to the applicable express warranties.

180. Under section 1793.2(d), if Defendants were unable to conform the Class Vehicles to the applicable express warranty after a reasonable number of repair attempts, Defendants were required to replace the Class Vehicles or make full restitution to Plaintiff Milan and Class Members.

181. The Class Vehicles did not conform to Defendants' express warranty at the time of sale or at any time thereafter. As Defendants themselves admitted in their November 2025 letter, the Class Vehicles' overall vehicle score was "Not Rated"—not the Government 5-Star Overall Safety Rating warranted in the Monroney label. This nonconformity cannot be remedied by repair; no repair or modification to the Class Vehicles can confer upon them an NHTSA overall safety rating they were never awarded.

182. Despite acknowledging the nonconformity, Defendants have failed to replace the Class Vehicles or make full restitution to Plaintiff Milan and Class

Members as required by California Civil Code section 1793.2(d).

183. Plaintiff Milan and Class Members suffered injury in fact and lost money and/or property as a result of Defendants' unlawful conduct alleged herein because they purchased Class Vehicles bearing Monroney labels that Defendants intentionally, willfully, and knowingly caused to include false and misleading safety-rating representations and caused to be placed on Class Vehicles, and Plaintiff Milan and Class Members relied on those representations in deciding to purchase the Class Vehicles and in paying the prices they paid.

184. Defendants have not offered compensation for the difference in market value between a vehicle bearing a Government 5-Star Overall Safety Rating and one that is "Not Rated" by the NHTSA, and have taken no other remedial action to make all of Plaintiff Milan and the Class Members whole.

185. Defendants' failure to honor their express warranty was willful within the meaning of California Civil Code section 1794(c). Defendants knew, or reasonably should have known, that the Class Vehicles' Monroney labels incorrectly represented the overall vehicle score, particularly in light of their prior misconduct involving materially identical misrepresentations on the Monroney label of the 2014 Cadillac CTS and the litigation that followed. Despite this knowledge, Defendants continued to sell Class Vehicles with the false Monroney label without correction, and failed to promptly notify purchasers or offer appropriate relief.

186. As a direct and proximate result of Defendants' breach of express warranty under the Song-Beverly Consumer Warranty Act, Plaintiff Milan and the Class Members are entitled to: (a) actual damages, including the diminution in value of the Class Vehicles; (b) consequential and incidental damages; (c) a civil penalty of up to two times the amount of actual damages for Defendants' willful violation pursuant to California Civil Code section 1794(c); (d) restitution of all amounts paid for Class Vehicles; and (e) reasonable attorney's fees and costs pursuant to California Civil Code section 1794(d).

## COUNT IX

**(Breach of Express Warranty, Cal. Com. Code section 2313)**

187. Plaintiff Milan and Class Members reallege and incorporate by reference each of the paragraphs and allegations set forth herein and above.

188. Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

189. Defendants knew, or had reason to know, of the specific use for which the Class Vehicles were purchased.

190. By way of the Monroney label affixed to each Class Vehicle at the point of sale, Defendants made written affirmations of fact and provided a description of the Class Vehicles as having a Government 5-Star Safety Rating—the highest rating available—in three areas: (1) Overall Vehicle Score; (2) Frontal Crash; and (3) Side Crash. These affirmations of fact and descriptions of the goods constituted express warranties within the meaning of California Commercial Code section 2313(1).

191. Plaintiff Milan and Class Members materially relied upon the Monroney label, and the safety ratings provided therein, in deciding to purchase the Class Vehicles at the prices they paid. A reasonable consumer would consider a vehicle's safety rating material to the decision to purchase.

192. The express warranties in the Monroney label were made by GM LLC directly to consumers, including Plaintiff Milan and Class Members, at the point of sale and were directed to the ultimate purchasers of the Class Vehicles. Accordingly, privity of contract is not required for Plaintiff Milan and Class Members to assert claims for breach of express warranty. The Class Vehicles' safety ratings as represented, affirmed, and warranted by Defendants formed a part of the basis of the bargain within the meaning of California Commercial Code section 2313(1).

193. Plaintiff Milan is informed and believes, and thereon alleges, that the price and value of the Class Vehicles as sold to Plaintiff Milan and the Class Members was based on having the full safety ratings as affirmed and promised by

Defendants.

194. Contrary to Defendants' written affirmations and warranties, the Class Vehicles did not have a Government 5-Star Overall Vehicle Score from the NHTSA at the time of sale, or at any time thereafter. In truth, the Class Vehicles' overall vehicle score was "Not Rated," meaning the NHTSA had not assigned any overall safety rating to the Class Vehicles whatsoever. This nonconformity was not caused by any act or omission of Plaintiff Milan or the Class Members; the Class Vehicles never conformed to Defendants' express warranty.

195. At some point in or around November 2025, GMC sent letters to Class Vehicle owners to inform them that the Monroney label that was affixed to the Class Vehicles was incorrect. Specifically, the letter informed Class Vehicle owners that the reported overall vehicle score from the NHTSA of 5-Stars was incorrect. According to GMC, the Class Vehicles actually had a "Not Rated" overall vehicle score from the NHTSA. Defendants' own letter constitutes an admission that the Class Vehicles never conformed to the express warranties made in the Monroney label, and confirms that this nonconformity existed from the date of sale.

196. By selling Class Vehicles bearing an express warranty of a Government 5-Star Overall Safety Rating that was false at the time of sale, and by failing to cure the breach after acknowledging it, Defendants breached their express warranty to Plaintiff Milan and the Class Members. Defendants have not offered to compensate Class Vehicle owners for the diminished value of their vehicles, have not offered to rescind the purchase contracts, and have taken no remedial action to make Plaintiff Milan and Class Members whole.

197. As a direct and proximate result of Defendants' breach of express warranty, Plaintiff Milan and the Class Members have suffered actual damages, including but not limited to: (a) the difference in market value between a Class Vehicle bearing a Government 5-Star Overall Safety Rating and a Class Vehicle that is "Not Rated" by the NHTSA; (b) loss of the benefit of the bargain; (c) potential

increases in automobile insurance premiums attributable to the lower or absent NHTSA safety rating; and (d) other consequential and incidental damages in amounts to be proven at trial.

198. Plaintiff Milan has provided timely notice to Defendants of the breach of express warranty as required by California Commercial Code section 2607(3)(a). In the alternative, formal notice is satisfied because Defendants, through their November 2025 letter acknowledging the incorrectness of the Monroney label, had actual knowledge of the nonconformity before any notice from Plaintiff Milan or Class Members, and additional notice would be superfluous. Despite notice, Defendants have failed to cure the breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Milan, on behalf of himself and the putative Class Members, prays for a judgment:

a. Determining that this action is a proper class action and certifying the Class, as defined herein;

b. Appointing Plaintiff Milan as Class Representative;

c. Appointing the undersigned as Class Counsel;

d. Finding Defendants liable to Plaintiff Milan and Class Members for actual damages in such amount(s) as the Court or Jury may determine;

e. Awarding statutory damages as appropriate;

f. Awarding disgorgement of gross profits and all other forms of equitable monetary relief;

g. Awarding punitive damages based on Defendants' malicious, oppressive, fraudulent, wanton and reckless behavior;

h. Awarding pre- and post-judgment interest;

i. Awarding restitution, as claimed herein or as the Court may deem proper;

j. Awarding injunctive relief, as claimed herein or as the Court may deem

proper;

k. Awarding Plaintiff Milan and Class Members attorney fees and all litigation costs;

l. Awarding Plaintiff Milan and Class Members such other relief as may be just and proper;

m. Awarding compensatory damages against Defendants in favor of Plaintiff Milan and the Class for damages sustained as a result of Defendants' wrongdoing; and

n. Awarding such other and further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Milan hereby demands a trial by jury on all issues so triable.

Dated: July 30, 2026

**SINGLETON SCHREIBER, LLP**

By: ______________________________
Michelle M. Meyers
Attorneys for Plaintiff KEIR MILAN

Vinesign Document ID: 1349AAC3-28AC-4BAC-A745-FDD83F1FC74B


**VERIFICATION OF FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

I, Kier Milan, have read the attached VERIFIED FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL and know its contents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 07/29/2026 in Bell Canyon, California.

Keir Milan

Kier Milan

The signed document can be validated at https://app.vinesign.com/Verify